Patricia Amberman v. Secretary of Veterans Affairs, 2008-71-11. Mr. Carpenter, good morning. Good morning, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Patricia Amberman. Ms. Amberman appeals a decision from the United States Court of Appeals for Veterans Claims which deals with the issue of whether or not the provisions of 38 CFR 4.14 can provide an adequate legal basis for establishing that a clear and unmistakable error occurred in a VA decision. In this case, the assignment of a separate rating for two different disabilities does not constitute a clear and unmistakable error. Yet that's precisely what the VA found occurred in the May 2002 rating decision, which was merely implementing the October 2001 Board of Veterans Appeals decision. In that decision, the Board had granted a separate claim filed by Ms. Amberman for a separate psychiatric disability, finding that she was entitled to service connection for post-traumatic stress disorder. She had previously been granted service connection the day following her discharge from service for a separate psychiatric disability, which is characterized as a bipolar disorder with alcohol abuse disorder. Mr. Carpenter, isn't this a case of applying 38 CFR 4.14 to the facts? And the court below said in finding that the decision contained Q because the arrow violated the provision, the Board stated that the record didn't contain competent clinical evidence and went on to say that the manifestations could not be between one and the other, could not be distinguished. Isn't this applying the regulation to the facts? No, it's not, Your Honor, because this regulation was used as the legal basis for undoing a final decision of the VA, which in fact Ms. Amberman was in the course of appealing. Her non-compensable rating, separate rating for post-traumatic stress disorder, the VA took away that opportunity to appeal that separate rating and merged those conditions all together by mistakenly finding a clear and unmistakable error. What the VA did in its May 2002 decision was in fact the correct application. So what is the legal question? The legal question is whether or not 3.414 can form a legal basis for a finding of clear and unmistakable error. 4.14 is to deal with the question of whether there are separate manifestations, excuse me, whether there are manifestations that cannot be distinguished between two types of disabilities. If that is the case, then under the anti-pyramiding regulation, the purpose of 3.14, then you don't assign a separate rating. That's precisely what the VA did in its May 2002 decision. It said we're going to assign one rating for the bipolar and we're going to assign a non-compensable rating. But what are you challenging here? What are you saying? The legal question is therefore what this provision, what this regulation says? Does this regulation provide the legal basis for what the VA did in this case? It found a clear and unmistakable error in one of its own decisions. It acted sua sponte to determine that. So you would like us to rule that under 4.14 cannot be used to find a clear and unmistakable error? Yes, because it's the ultimate quintessential weighing of facts. This regulation is only about the weighing of facts. And the weighing of facts cannot form the basis for a clear and unmistakable error. Because by the very nature of this regulation, the agency itself is asked to weigh what the different symptomatology is and whether that symptomatology is so overlapping that they cannot distinguish between these two different disabilities. If they are in fact different disabilities, then Ms. Amberman is entitled to a separate rating. But that's what she got when she made a separate application. If there are two different disabilities, then she is entitled to what? She's entitled to a rating for the bipolar disorder and a rating for the post-traumatic stress disorder. And compensation with respect to both of them? That's correct. To the extent that the combined rating regulation supersedes. There's a separate regulation that says you take two ratings and combine them under a mathematical formula created by the VA. In other words, you can't get 200%, right? No, you can't get 200%. The most you can get is 100%, but there is a separate provision for qualifying. But what about if for PTSD the only manifestations are insomnia? And for the other condition, the only manifestation is insomnia. Is it your view of the regulation that she gets double? No, she would get precisely what she got in the May decision. She would get a rating for one, but not a rating for the other. She would get a rating for the bipolar and a non-compensable rating for the post-traumatic stress disorder. But they would stay as two separate disabilities. What the VA has done is to say that we're going to nullify what the board did by finding that she was entitled to service connection for post-traumatic stress disorder as a separate disability, and we're going to merge it together with her pre-existing bipolar condition. And that's what the regulation requires. And applying that regulation to these facts is a lot of facts. No, Your Honor, because that's not what they did. What they did was they found clear... Who did? The VA. No, the VA. They found clear and unmistakable error in having correctly applied their own regulation. We're not reviewing the VA, are we? No. We're reviewing the Court of Appeals. That's correct. And the Court of Appeals affirmed, by relying upon the board's interpretation, that the VA could lawfully have found Q in the May 2002 decision. Mr. Carpenter, before we go on, you're running out of time. I'd like to just read to you, the Veterans Court stated that, and I quote, the board specifically noted, and the appellant does not dispute, that the manifestations of symptomatology resulting from the appellant's two service-connected disabilities cannot be distinguished. Now, what is wrong with that statement? And it's a factual finding. And we can't disturb that factual finding in appeal. No, you cannot, Your Honor. But that was not the issue in the appeal. The issue in the appeal, what Ms. Amberman appealed, was not whether the failure to assign a separate compensable rating for post-traumatic stress disorder error, but whether or not the VA had committed error when it found clear and unmistakable error in having done precisely that. But aren't you focusing on the cause of the injury rather than the resulting effects? No, Your Honor. I am in the brief to explain why these are different disabilities, because it is essential to understand that when they're separate disabilities, what the VA did in its May 2002 decision was the correct application of 3.14. But there was a factual finding by the board that the manifestations of the two disorders, right? That's correct. Could not be distinguished. That's a factual finding. How do we overrule that? Because that factual finding has to do with whether or not 4.14 was correctly applied. Only the first sentence. As the... You're arguing, right? You're only arguing on the first sentence, not the entire regulation. That's correct. And you have to take the entire regulation in totality, not just the first sentence. Of course you do, Your Honor. But when you take the totality of it, you see that what was done in May 2002 was the correct application under the VA's interpretation of the facts. Ms. Amberman was prevented from appealing that determination because the VA intervened and found that the May 2002 decision was the subject of a clear and unmistakable error. Therefore, Ms. Amberman had to appeal the Q determination, and that was what was before the Board, and that was what was reviewed by the Veterans Court. And when the Board made its findings, it made its findings that the regulation said what the regulation said. It didn't analyze whether that was or was not a basis for a finding of clear and unmistakable error in the May 2002 decision. The net result here is that Ms. Amberman now has two separate disabilities rated as a single disability. And you would like us to say that there was an error in law and therefore she should get two separate ratings for each disability? That she has the right to a separate rating. Now, if the facts are substantiated, as were found in the May 2002 decision and implicitly found in the Board's decision, that there is no separate or distinguishable difference in the manifestation. She did not dispute that, did she? She did when she filed her Notice of Disagreement, Your Honor, but that wasn't the issue before the Board. The issue before the Board was not whether she had separate manifestations because that was the argument in the NOD she filed in the May 2002 decision. She filed an NOD with the November 2002 decision, which found that the May 2002 decision was clear and unmistakable error. The VA came in and intervened and essentially negated the finding made by the October 2001 decision. But Mr. Carpenter, I'm still having some problems as to how this becomes a legal determination, which is an error, versus a factual determination made by the Board, affirmed by the Court of Veterans' Appeals, and now you're before us trying to get us to reapply the facts to the law. With respect, Your Honor, I am not trying to get you to reapply the facts. I am trying to get you to look at what the plain language of this regulation says, analyze what the VA did in 2002, and see if you can reconcile that with an allegation made by the VA that in applying correctly that regulation, that was a clear and unmistakable error. That sounds to me like you're applying a lot of facts. No, that's what the VA did in November 2002. That resulted in a finding of clear and unmistakable error. That's what Ms. Amberman appealed. She had the right to have the correct interpretation of 4.14 considered when resolving the question. And what is your view of what the correct interpretation of 414.14 is? That what the VA did in May of 2002 was correct, to assign a separate non-compensatory... That she is entitled to a separate rating, even if it's the same manifestation under different diagnoses. And that that's what the VA did in May of 2002. It signed one rating for bipolar and a non-compensable rating for post-traumatic stress disorder. Now she no longer has a non-compensable rating for post-traumatic stress disorder because it is rated as part of her bipolar disorder. And didn't she get 100%? Yes, she did, Your Honor, and it went back to 1991, four years before she ever alleged she had post-traumatic stress disorder. And that's the part of the inconsistency. But didn't she end up with 100%? She did, Your Honor. And you indicated she can't get more. But she can get more if she can establish that she has separate manifestations from post-traumatic stress disorder. You want separability because they may change in the future. Absolutely, because if she has 100% for one and can establish 60% or more for the other or a combination of other disabilities which she may have, she's eligible for special monthly compensation, which enhances the amount of her compensation. Would you like to say the remainder of your time? Yes, Your Honor. Thank you. Mr. Preheim. Good morning. May it please the Court. At most, there's one issue within this Court's jurisdiction, and that concerns the interpretation of 38 CFR 4.14, which we set forth in its entirety in our brief. And what are the two opposing interpretations, and where do we find that in the Court decision? Well, Ms. Ammerman seems to believe that the regulation, anti-pyramid regulation, only applies where the VA finds that two diagnoses, two conditions, are in fact the same disability. Now, that's at odds with the plain language of the regulation. Certainly, the regulation is implicated... Wait, can we run that by me again? Sure. Now, you're stating what their view is, is that two diagnoses... What did you say? Two diagnoses? We think what she's saying is that the regulation only applies where the VA finds that two diagnoses, in this case PKSD and bipolar disorder, are in fact the same disability. In other words, she's focusing on the first sentence of the regulation. Certainly, the regulation is implicated in a situation like that. Our position is that the regulation is also implicated where the manifestations of different diagnoses are the same. We focus on the last sentence of the regulation. And here, it's our understanding that there is no factual dispute that the manifestations of Ms. Ammerman's PTSD and bipolar disorder are in fact the same. I thought your view was more... I saw the difference, so maybe I'm wrong. The question is sort of what you label a disability. I thought in the government's view, there's a diagnosis of PTSD and whatever, and then the disability is sort of the manifestation or the symptomology of that diagnosis, and that's what you would term to be the disability. I think that's fairly accurate. What I would say is you have a diagnosis, PTSD and bipolar disorder. The disability is the impairment in earnings capacity, and then of course you have symptoms or manifestations. Generally, impairment in earnings capacity will equate with the manifestations of whatever the diagnosis is. Now, Ms. Ammerman appears to be arguing that merely because she received separate diagnoses, separate ratings, that that is a separate disability, and that simply isn't the case. Disability does not equate with diagnosis. But doesn't 414 really preclude any double type of recovery for the same manifestation? Isn't that what the law is? That's right. In fact, to allow her to receive separate ratings would be to give her a double recovery. In other words, if she were to be rated 50% for PTSD and 30% for bipolar disorder, when the symptoms and manifestations of both conditions are identical, she would be receiving a double recovery for those same symptoms. But couldn't there be instances where the diagnoses are completely different? Someone is blinded and also loses a leg. Certainly. Absolutely. And then the symptoms are, I mean, you can articulate them as being completely different, but it might be in some of those circumstances that the reduction in earnings ends up being more or less the same. I don't know. How does that play out, where the symptoms are different than the government would say, no, we don't apply this? Well, no, because you can focus on the impairment in earnings as well. The first sentence. In other words, if the impairment in earnings capacity from two separate diagnoses is the same, then the regulation would be implicated in that situation as well. To use two examples, one a generic example and one specific to the ratings table, if a veteran has nerve damage in their right arm that's service-connected and then later loses their right arm, again, in a service-connected injury, they don't receive a double recovery for both injuries. They receive one benefit from the loss of the right arm. Similarly, under the ratings table, 4.114, that contains the scheduled ratings for the digestive system, and it lists chronic liver disease is diagnostic code 7345, and there's a different diagnostic code for hepatitis C, 7354. So a veteran could have both hepatitis C and chronic liver disease, but the symptoms of those two are identical, exactly the same. So if a veteran has both, they don't receive, again, a double recovery. But they could have different diagnoses. Yes, exactly. Hepatitis C is one diagnosis, one rating code, and chronic liver disease, different rating code, different diagnosis. And just to emphasize, if the VA can't distinguish the manifestations from two diagnoses, it doesn't know how to rate them. It can't rate them separately as a practical matter. Further, it's not as if the VA is ignoring Miss Amberman's PTSD in this case. Rather, what it did was it considered all the symptoms from both her PTSD and her bipolar disorder and gave her one benefit from what it termed her psychiatric conditions. But you heard Mr. Carpenter's argument and the portion of his focus, which goes to sort of the issue here being the fact that the VA originally gave her that separate rating and the question of whether or not there was a CUE. Do you want to address that? There was a separate rating given. There was a rating of 70% given for bipolar disorder and a 0 for PTSD. That was sent back to the regional office for CUE, clearly unmistakable error. And I think the concern was at the time that because she was given a 0 for PTSD, that somehow, even though the symptoms were overlapping, somehow the regional office wasn't actually considering her PTSD when it did the analysis. But wasn't that remand for Q at that point in time really to the benefit of the veteran? To make another determination as to whether or not there was additional diagnoses that could be made and different manifestations? That's right. Where was the error because they sent it back under CUE? I don't quite understand that. Well, I think the error was in assigning separate ratings, is what the board was saying at the time. In other words, because there was no way to distinguish her manifestations under the anti-pyramid regulation, she should not receive two separate ratings, even though one was listed as 0. Nonetheless, it was still an error. So if it was more than 0 then, would it have made any difference? I don't quite understand the logic of sending it back if it was 0 at that point in time. I think they were trying to help her because I think the fear was that her PTSD wasn't being considered in the overall benefit because she received a 0 rating. Now, of course, when they sent it back, she continued to receive a 70% rating. Then when it went back up to the board, it was increased to— But not for PTSD at that point? At that point, yes, for both as one. No, but I mean when it went back up to the board, she did increase her rating. That's right. But was it for PTSD? It was for both. It was what they styled her psychiatric conditions. So it was a generic type of recovery. I'm sorry? It was a generic type of recovery. That's right. Now, Sanderman also cites to this foretold in the Ephraim case, that case simply isn't relevant to this appeal. That case concerned the jurisdiction of the Veterans Court, and this court held that it's improper for the Veterans Court to reject a claim on jurisdictional grounds merely because the symptoms of that claim were intertwined with the previously diagnosed condition. But whether a claim is accepted for jurisdictional purposes is different from the issue here, which is— and that's only the start of the analysis. The issue here is what sort of benefits you get from your claim. In fact, the court in Ephraim, this court, explained that the decision is limited to the issue of jurisdiction, the Court of Veterans Appeals. And then in the Boggs case, the subsequent case, this court made clear that a veteran can have two claims for jurisdictional purposes, but that doesn't necessarily mean that the veteran will receive the benefits from both claims. In other words, that both will be rated separately and then combined. In fact, this court explained that under the VA's regulations, the proper time to consider the veteran's symptoms is when determining the amount of the benefit, and that's exactly what the VA did here. So even though she got sort of a combined rating here because the symptoms, the manifestations seem to have been one, but the board left open the possibility— I mean, in the future, she could come in, and if there are other symptoms that seem to be unique to one or the other, she might have the opportunity to do that. That's right. The board specifically said that. That's right. And I wouldn't say that they were—that she received a combined rating because that suggests that she received sort of separate ratings and then they were combined. Instead, she received one rating for what was termed her psychiatric condition that considered both her PTSD and her bipolar disorder. But she's already established that she has both of those diagnoses. That's right. So if she comes in, it's a question of looking for the symptoms and not redetermining what the diagnosis is. That's right. And for these reasons, we respectfully request that the court affirm the decision of the veterans' court. Thank you, Mr. Prihan. Thank you. In the little time I have left, I'd like to direct the court's attention to the May 2002 decision, which is in the joint appendix of page 58. And in the section number 2, service connection for post-traumatic stress disorder under analysis, it explains why the non-compensable rating was assigned, and it was based upon the separate manifestations of post-traumatic stress disorder that were evaluated by the VA in May of 2002 when they were implementing the October 2001 decision. Then I would direct the court's attention to the November 2002 decision, which found that there was clear and unmistakable error in the May 2002 decision, specifically at page 33, where they explain their decision and specifically reference the Board of Veterans' Appeals remand of October 2002 that says that a separate evaluation for post-traumatic stress disorder in addition to bipolar constituted an evaluation of the same disability under various diagnoses. That is a reweighing of the facts. Those facts cannot be, those disputed facts, cannot be the basis for a finding of Q. If Ms. Amberman had brought an allegation, a request for revision, based upon Q on that type of allegation, her allegation of Q would fail. The VA's allegation of Q, their sua sponte finding, based upon the prodding of the November 2002 board decision, which suggested the outcome to them, was to simply go back and reweigh the facts. The weighing of the facts is not a lawful basis. You cannot use 4.14, which inherently involves the weighing of what manifestations do or do not exist, as a legal basis for finding that there was clear and unmistakable error. The VA in no way is harmed by Ms. Amberman having two separate evaluations. And the gratuitous language that you referred to, Judge Prost, is simply misdirection. The reality is, is that by having put these, as the government has conceded, as rated as one single psychiatric disorder, she comes forward at a later date and says, these are my manifestations, they'll say, those have already been considered in your rating. You are not separately rated for post-traumatic stress disorder. That's why this interpretation is critical. Thank you very much. Thank you, Mr. Koffender. The case will be taken under advisement.